IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT P. LUDGATE, et al. | : | |
| | : | |
| **Plaintiffs** | : | |
| v. | : | 3:11-cv-0071 |
| | : | (JUDGE MARIANI) |
| JEANNE C. BINGHAM, et al. | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

This action arises upon the Complaint of Plaintiffs Robert P. Ludgate ("Ludgate") and

Pocono Resorts Realty, Inc. ("Resorts")(collectively, "Plaintiffs"), against Defendants Jeanne C.

Bingham ("Bingham"), Andrew Hanko ("Hanko"), and Pocono Mountain Lakes Realty, LLC

("PMLR")(collectively, "Defendants").  Plaintiffs allege a total of fourteen (14) separate counts

against Defendants arising from Defendant Bingham's departure from Ludgate's real estate

company, Resorts, where Bingham was employed for over thirteen years.  Bingham and Hanko

filed a Motion to Dismiss and for Stay of Proceeding on May 4, 2012.  PMLR filed a separate

Motion to Dismiss.  For the reasons set forth below, Defendants Bingham and Hanko's Motion to

Stay will be granted, and the matter will be administratively closed pending the resolution of all

arbitrable claims.

## BACKGROUND

Ludgate is the president and chief executive officer of Resorts, and for twenty-five years

has been in the "business of selling, renting, marketing and managing properties throughout

northeast Pennsylvania and especially the Poconos." (*See* Pls.' Second Amended Compl. at ¶¶ 2-3 (hereinafter "Pls.' Compl.").) Bingham was an employee of Resorts for over thirteen years until she ended her relationship with Plaintiffs on or about September 17, 2010. (*See* Pls.' Compl. at ¶ 5.) Hanko was also an "agent" of Resorts and was "compensated to perform cleaning services" at Resorts's "inventory properties." (*See* Pls.' Compl. at ¶ 8.) PMLR is one of Resorts's competitors. (*See* Pls.' Compl. at ¶ 10.)

Plaintiffs maintain that Bingham "was the beneficiary of specialized training provided by [Resorts], and she was entrusted with and given access to certain confidential, proprietary and trade secret information belonging to [Resorts] and/or Ludgate, including but not limited to, customer and client lists, customer and client contact information, customer and client contracts, business and marketing methodologies, pricing information, business information, documents, books, company records, files, real estate listings and listing contracts." (*See* Pls.' Compl. at ¶ 11.) Plaintiffs also allege that Bingham had access to "certain copyrighted Work known as the Vacation Rental Software owned by Ludgate" ("Vacation Software"). (*See* Pls.' Compl. at ¶ 11.) Plaintiffs assert that the information contained in this software would be "tremendously" valuable to competitors. (*See* Pls.' Compl. at ¶ 11.) Plaintiffs allege that Bingham was a manager, officer, and shareholder in Resorts, and that she left without providing notice. (*See* Pls.' Compl. at ¶ 13.) Plaintiffs further allege that Bingham, while still employed by Resorts, was actively conspiring with PMLR to divert business and clients. (*See* Pls.' Compl. at ¶ 14.) Bingham and Hanko are husband and wife, and Plaintiff avers that they conspired together, and with PMLR, to

injure Plaintiffs and to divert existing and prospective business customers and clients of Plaintiffs. (See Pls.' Compl. at ¶15.)

On or around February 25, 2000, the Vacation Software was installed onto Bingham's personal computer by Ludgate, and Bingham signed an agreement with Resorts that permitted Resorts to remove the Vacation Software, at its own expense, from Bingham's computer if she ever left her position. (See Pls.' Compl. at ¶¶ 32-33.) Plaintiffs aver that "[p]ursuant to the License and Confidentiality Agreement, Bingham was authorized to access and utilize certain Confidential Information and Software for the purposes of performing her duties for [Resorts]." (See Pls.' Compl. at ¶ 34.) Plaintiffs' Complaint, in addition to the copyright registration attached as Exhibit B, indicates that Ludgate, not Resorts, owns the copyright on the Vacation Software, and that such copyright was obtained on December 10, 2003. (See Pls.' Compl., Exh. B.) Exhibit A to Plaintiffs' Complaint contains the License and Confidentiality Agreement signed by Bingham with Resorts, which indicates that Ludgate was not a party to that agreement. (See Pls.' Compl., Exh. A.)

Bingham left the employ of Plaintiffs and began working for PMLC. Bingham claims that she does not have the Vacation Software on her computer. The record does not indicate that Bingham or Hanko signed non-compete covenants with any Plaintiff. Resorts and Bingham did, however, enter into a Brokerage Agreement that contained an arbitration clause. (See Defs.' Br. in Supp. Mot. to Dismiss, Brokerage Agreement Contained in State Court Filings, Exh. A, ECF Dkt. 50-1.)

## STANDARD

Motions to compel arbitration or to dismiss proceedings under the Federal Arbitration Act ("FAA") require district courts to apply the standard of review employed in evaluating motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007)(citing *Par-Knit Mills, Inc. v. Stockbridge Farms Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* The opposing party receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* If there is a genuine issue of fact, the FAA directs the District Court to hold a trial to determine whether an arbitration agreement exists." *Id.* (citing 9 U.S.C. § 4).

## DISCUSSION

Plaintiffs' Second Amended Complaint contains fourteen separate causes of action: (1) Violation of the Computer Fraud and Abuse Act ("CFAA") by Bingham and PMLR against all Plaintiffs; (2) Copyright Infringement by all Defendants against Ludgate; (3) Contributory Copyright Infringement by all Defendants against Ludgate; (4) Vicarious Copyright Infringement by all Defendants against Ludgate; (5) violations of the Stored Communications Act ("SCA") by all Defendants against all Plaintiffs; (6) breach of contract by Bingham against Resorts; (7) breach of fiduciary duties by Bingham against Resorts; (8) tortious interference with existing and/or prospective contractual and/or business relations by all Defendants against Resorts; (9) tortious misappropriation of confidential and/or proprietary information and trade secrets by all

4

Defendants against Resorts; (10) violation of the Pennsylvania Uniform Trade Secrets Act by all Defendants against Resorts; (11) procuring information through improper means by all Defendants against Resorts; (12) unfair competition by all Defendants against all Plaintiffs; (13) unjust enrichment by all Defendants against Resorts; and (14) civil conspiracy by all Defendants against all Plaintiffs.

Defendants filed two separate motions to dismiss, and both Bingham and Hanko moved to stay the present action based upon an arbitration clause in Bingham's Brokerage Agreement with Plaintiffs.

"The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513, 522 (3d Cir. 2009) (citation omitted). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (citations omitted). "In particular, the FAA provides that as a matter of federal law '[a] written provision' in a maritime or commercial contract showing an agreement to settle disputes by arbitration 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2).

"In determining whether a matter is arbitrable, courts are bound by the principle that arbitration is a creature of contract and a party cannot be required to submit to arbitration any

5

dispute which he has not agreed to submit." *The Basketball Marketing Co., Inc. v. Urbanworks Entertainment*, No. 04-3179, 2004 WL 2590506, at * 4 (E.D. Pa. Nov. 10, 2004)(citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).[1] A district court must submit a case to arbitration "when (1) there is a valid agreement to arbitrate and (2) the specific dispute falls within the substantive scope of the agreement." *Id.* (citing *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001)). To determine whether an action is arbitrable, "the parties' intentions control." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "Furthermore, although doubts about the scope of an arbitration agreement must be resolved in favor of arbitration, the validity of an arbitration agreement and the issues that must be arbitrated are matters to be determined by the Court." *See Urbanworks Entertainment*, 2004 WL 2590506, at * 4 (citing *Medtronic Ave., Inc.*, 274 F.3d at 55). Courts,

---

[1] The Court's application of cases raising issues of arbitrability under collective bargaining agreements is proper in this matter in light of the Supreme Court's holding in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302 (2001), in which the Court held that the FAA's coverage provision requires the enforcement of arbitration agreements in any contract involving commerce, including collective bargaining agreements. *Id.* at 124 (citing 9 U.S.C. § 2). The Court is further aware of *Circuit City's* holding that "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers." *Id.* at 119. This ruling has been consistently applied within the courts of this circuit as demonstrated in *Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 218 (3d Cir. 2003), in which the Third Circuit noted the Supreme Court's mandate "that with a limited exception, arbitration agreements covering employment-related claims fall within the FAA's provisions." *Id.* at 218 (internal citations omitted); *see also Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir 2004)(recognizing FAA exemption of "transportation workers"). "Any arbitration provision in an agreement affecting interstate commerce is subject to the Federal Arbitration Act." *Vantage Technologies Knowledge Assessment, LLC v. College Entrance Examination Bd.*, 591 F. Supp. 2d 768, 770 (E.D. Pa. 2008)(citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); 9 U.S.C. § 2). The cases discussed by the Court in the matter *sub judice* do not involve claims relating to the exception arising under Section 1 of the FAA, and thus constitute appropriate analytical tools by which to evaluate the parties' claims. Because the Supreme Court has ruled that federal courts have jurisdiction to enforce the arbitration provisions of collective bargaining agreements under the FAA, with the single exception of contracts of employment for transportation workers, *Circuit City Stores, Inc., supra*, the case law developed with respect to the enforceability of arbitration clauses in collective bargaining agreements has application to cases involving the arbitrability of disputes under non-labor contracts containing an arbitration clause.

not arbitrators, decide the substantive arbitrability question. *See AT&T Technologies, Inc. v.*

*Comm's Workers,* 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Under the Brokerage Agreement entered into between Bingham and Resorts,

disagreements between Bingham and Resorts arising from their Broker-Salesperson business

relationship are to be settled in arbitration.[2] Article XIII of the Brokerage Agreement states, in

full:

> In the event of disagreement or dispute between Salesperson and Broker, or
> the Salesperson under contract with Broker, arising out of, or connected with
> this agreement, which cannot be adjusted by and between the parties
> involved under the terms and conditions of this agreement, the parties agree
> to submit such disagreement or dispute to arbitration in accordance with the
> rules, regulations and procedures of the American Arbitration Association.
> Both parties will submit their complaints to the grievance committee of the
> Board of Realtors having territorial jurisdiction over the dispute.  Broker and
> Salesperson hereby agree to be bound by the decision of the arbitrator
> named by the above described arbitration body.

Brokerage Agreement, Article XIII, ECF Dkt. 50-1, at 17.

The present dispute arises between Salesperson Bingham and Resorts, as Broker, and

Ludgate and concerns the exact subject matter governed by the Brokerage Agreement.  In fact,

a dispute arising under the Brokerage Agreement is at the core of Plaintiffs' claims.  Plaintiffs'

federal and state claims all arise from a conflict between Bingham and Plaintiffs over Bingham's

departure from Plaintiffs' company, and the alleged use or misuse of copyrighted and

---

[2] The Brokerage Agreement is docketed as an attachment to Defendants Bingham and Hanko's Motion to Dismiss, ECF Dkt. 50-1.  The Brokerage Agreement was originally attached as an exhibit to Plaintiffs' suit filed in the Court of Common Pleas of Carbon County, which was filed on November 19, 2010.  Plaintiffs' state court suit, also attached to Defendants' Motion to Dismiss, asserts that this Brokerage Agreement was entered into on January 5, 2008. Plaintiffs do not deny the existence of the Brokerage Agreement, but do submit that it should not be considered because it was not raised in their federal Second Amended Complaint.  The Court disagrees because questions regarding the validity of an arbitration agreement are treated similarly to motions for summary judgment; thus, as previously explained in this memorandum opinion, the Court is required to consider evidence submitted beyond that contained in Plaintiffs' Second Amended Complaint for the purpose of determining the propriety of arbitration.

confidential materials for illicit purposes. Plaintiffs' claims against Bingham further allege

breaches of fiduciary duties, unfair competition, and civil conspiracy. These claims all arise from

the contractual relationship entered into by Resorts and Bingham as set forth in the Brokerage

Agreement, and are subject to the arbitration clause contained in the Brokerage Agreement.

Therefore, this Court lacks jurisdiction to hear them. *See Wright v. Early Warning Systems, Inc.,*

2012 WL 579310, at *3 (D. Del. Feb. 22, 2012)(citing *Harris v. Green Tree Fin. Corp.,* 183 F.3d

173, 179 (3d Cir. 1999)("[i]f a valid and enforceable agreement to arbitrate governs the dispute,

the court lacks jurisdiction").

In addition, Ludgate's individual claims against Bingham, as well as those asserted by

Resorts, are inextricably intertwined with Plaintiffs' claims against the other Defendants. For

instance, if Plaintiffs' claims against Bingham for alleged violations of copyright law are found to

be meritless, then Plaintiffs' claims against PMLR for the same violations would be unable to

withstand a substantive challenge.

Further, Plaintiffs' state law claims are jurisdictionally deficient absent the proper exercise

of supplemental jurisdiction ancillary to the assertion of a federal claim such as a violation of the

Copyright Act, the CFAA, or the SCA. Because this Court is required by the terms of the

Federal Arbitration Act to dismiss any claims among parties subject to an arbitration agreement,

it is unclear as to whether the federal claims asserted in this action, which are subject to

arbitration between Plaintiffs and Bingham, would provide a proper foundation for the Court to

exercise its supplemental jurisdiction over associated state law claims. If an arbitrator finds the

federal claims between Plaintiffs and Bingham to be without merit, the Court would lack

supplemental jurisdiction to hear any state law claims between those parties, as Plaintiffs would be unable to establish federal question or diversity jurisdiction.

Plaintiffs' Second Amended Complaint avers overlapping factual allegations and legal issues with regard to copyright infringement, the CFAA, and the SCA, and breach of contract. Both Resorts and Ludgate assert related, and often intermingled, claims concerning the use of the Vacation Software, in addition to the state law causes of action. For instance, Plaintiffs' allegations concerning the CFAA specifically implicate the alleged gaining of improper access to Resorts's computers by Defendants and are closely related to the copyright infringement claims made by Ludgate with regard to the Vacation Software. Similarly, the SCA claim is premised upon unlawful access to Plaintiffs' computers, and the Court would need to examine, and make findings on, facts closely related to both the Copyright Act and CFAA claims in order to come to any decision regarding this claim. Defendants' alleged conduct in using the Vacation Software to access Resorts's database implicates both copyright and CFAA questions within the framework of a single instance of supposed misconduct. Given the interwoven structure of Plaintiffs' Second Amended Complaint, the Court should, in the interests of justice and judicial economy, treat the collective claims of the Plaintiffs as a whole.

Section 3 of the Federal Arbitration act clearly states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of

9

the agreement, providing the applicant for the stay is not in default in
proceeding with such arbitration.

9 U.S.C. § 3.

"Thus, once it is determined that a matter before the court involves an issue subject to
arbitration, the court is directed to stay the proceedings pending arbitration." *G&V General
Contractors, Inc. v. Goode*, No. 86-7408, 1987 WL 9786, at * 7 (E.D. Pa. Apr. 21, 1987). "In
addition to the statutory authority conferred by Section 3, the power of a court to order a stay of
proceedings pending arbitration 'is inherent in the court itself.'" *Id.* (citing *Gavlik Const. Co. v.
H.F. Campbell Co.*, 526 F.2d 777, 784 (3d Cir. 1975)); *see also Barrowclough v. Kidder,
Peabody & Co.*, 752 F.2d 923, 938 (3d Cir. 1985), *overruled on other grounds, Pritzker v. Merrill
Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3d Cir. 1993). As the Supreme Court held in
*Moses H. Cone Mem. Hosp. v. Mercury Consrt. Co.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d
765 (1983), in some cases it is "advisable to stay litigation among the non-arbitrating parties
pending the outcome of the arbitration."

In *Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382 (8th Cir.
1983), the Eighth Circuit held that "absent an enforceable arbitration agreement between the
parties," a stay may nonetheless be imposed under Section 3 of the Federal Arbitration Act
where a matter for arbitration contains overlapping factual and legal issues with regard to the
claims proffered by non-parties to the arbitration agreement within the same suit. *Id.* at 386.
Similarly, in *American Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961 (4th
Cir. 1980), the Fourth Circuit held that, under certain circumstances, it makes "eminent sense" to

stay a proceeding when only some of the parties are subject to mandatory arbitration. *See id.* at

387. "While it is true that the arbitrator's findings will not be binding as to those not parties to the

arbitration, considerations of judicial economy and avoidance of confusion and possible

inconsistent results nonetheless [may] militate in favor of staying the entire action." *Id.* Section

3 of the FAA is "broad enough to permit the stay of litigation between nonarbitrating parties as

long as that lawsuit is based on issues referable to arbitration under an arbitration agreement

governed by the Arbitration Act." *Id.* Even aside from Section 3 of the FAA, however, a district

court possesses the "inherent power to grant [a] stay in order to control its docket, conserve

judicial resources, and provide for a just determination of the cases pending before it." *Id.*

Further, in *Pritzker, supra*, the Third Circuit held that a district court properly applied a

stay to nonparties to an arbitration agreement where the nonparties had interests "directly

related to, if not congruent with, those of a signatory." 7 F.3d at 1122. The Court found

traditional agency theory to be a basis for binding a non-signatory to an arbitration agreement

entered into by a corporation by virtue of the non-signatory's status as an agent, employee, or

representative of the corporation. *See id.* at 1121. In the present matter, Resorts is the

signatory to the arbitration agreement, and Ludgate is bound by that agreement as a result of

his status as an agent and representative of Resorts. In addition, the facts and legal issues

asserted by the Plaintiffs are closely interwoven. Plaintiffs' claims against Defendants generally

relate to the alleged improper use of copyrighted software by Defendants to gain unauthorized

access to Resorts's computer database. It is the purported use of this information that forms a

substantial part of the facts underlying Plaintiffs' non-federal claims for, *inter alia*, breach of

contract, breach of fiduciary duties, tortious interference with existing and/or prospective

contractual relations, and tortious misappropriation of confidential and/or proprietary information

and trade secrets. The overlap between Plaintiffs' claims is clear in that Ludgate claims to hold

the copyright to the Vacation Software, while the alleged agreement governing its use was made

between Resorts and Bingham. The Plaintiffs thus demonstrate that their interests intermingle

and have an interdependent relationship.

Accordingly, the parties who are subject to the arbitration agreement, Plaintiffs Resorts

and Ludgate, and Defendant Bingham, are required to arbitrate their disputes. The arbitration

clause in the Brokerage Agreement at issue encompasses the types of claims that the Plaintiffs

have asserted in this litigation. Further, Plaintiffs' statutory claims, arising as they do out of the

contractual relationship between Plaintiff Resorts and Defendant Bingham memorialized in the

Brokerage Agreement to which they bound themselves, are properly submitted to arbitration.

Moreover, the Brokerage Agreement contains provisions which address the rights and

responsibilities of Resorts and Bingham as parties to the Agreement with particular reference to

the obligations of the parties on termination of the Agreement. See, Article X - "Termination."

Thus, the provisions of the Brokerage Agreement clearly evidence the intentions of Resorts and

Bingham to resolve all claims arising out of their contractual relationship and the termination of

that relationship by arbitration. Thus, in *Pritzker, supra,* the Court, citing the Supreme Court's

decision in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96

L.Ed.2d 185 (1987), left no question that the duty to enforce an agreement to arbitrate includes

the arbitration of statutory claims. The Court in *Pritzker* thus stated:

Because the FAA established a federal policy favoring arbitration, *McMahon*, 482 U.S. at 226, the Court stated that federal courts must enforce arbitration agreements in a variety of contexts:

> Th[e] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded upon statutory rights. As we observed in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* [473 U.S. 614, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)], "we are well past the time when judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals" should inhibit enforcement of the Act "in controversies based on statutes."

*Id.* at 1117.

Further, in the interests of justice and judicial economy, the claims of Plaintiffs against those not party to the arbitration agreement must be stayed pending resolution of the arbitration proceedings to be undertaken pursuant to the Pocono Resorts Realty, Inc. Broker-Salesperson contract.

## CONCLUSION

For the reasons set forth in this opinion all claims in this case brought by Plaintiffs against Bingham will be dismissed, while all other claims will be stayed, and administratively closed, pending arbitration of the claims between Plaintiffs and Bingham.

**DATE:** September 6, 2012

Robert D. Mariani
United States District Judge

13